IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 1:22-CR-00330-JKB |
| | * | |
| AYAZ QURESHI, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The Government submits this memorandum in anticipation of the sentencing of the defendant, Ayaz Qureshi ("Defendant"), to aid the Court at the hearing scheduled for Wednesday, September 4, 2024, at 10:00 a.m. On April 9, 2024, Defendant pleaded guilty to Count Two of the Superseding Indictment, charging him with Aiding and Abetting Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. §§ 1343, 2.

The Government respectfully submits that a sentence of one year and one day's imprisonment is appropriate. The Government further requests two years of supervised release with the conditions recommended in the Presentence Investigation Report, a forfeiture money judgment of $250,723.00, restitution of $250,723.00, and the mandatory $100 special assessment.

### Background

As detailed in the parties' plea agreement filed April 9, 2024 (ECF No. 54-1), on or about March 14, 2021, Mr. Qureshi's associate submitted a fraudulent Paycheck Protection Program (PPP) loan application to Cross River Bank for Yazee, Inc., an ersatz business for which Qureshi was the President. This business was not legitimate: it had no employees and no real operations. Moreover, Mr. Qureshi was employed by a pizza shop in Baltimore and worked as a delivery driver for another business at this time.

1

Despite this, the application falsely claimed that Mr. Qureshi's business had 16 employees and an average monthly payroll of $100,289. In support of these false statements was a fabricated IRS Form 940 (Employer's Annual Federal Unemployment Tax Return). Even though Yazee, Inc. paid a grand total of $0 in wages and withheld $0 in federal income tax in 2019, this application deceitfully claimed that the company's total payments to all employees in 2019 was $1,203,471.52.

Mr. Qureshi provided his associate with various documents to assist with submitting the fake application, including photos of his driver's license, a voided check and bank statement from a Wells Fargo bank account in the name of Yazee, Inc., his Employer Identification Number, and the Articles of Incorporation for Yazee, Inc.

Based on the fraudulent claims and submissions in this application, Cross River Bank approved the PPP loan application and disbursed $250,723 to the previously-mentioned Wells Fargo account controlled by Mr. Qureshi. And Mr. Qureshi, in turn, gave his associate kickbacks – totaling $75,000 – by giving him eight checks with blank payee fields from this same Wells Fargo account. These kickbacks were directly traceable to the fraudulent PPP funds.

Mr. Qureshi visited with and communicated with this associate on numerous occasions during the time of the fraudulent PPP application and for nine months afterwards, in addition to telling another individual about his associate's work to obtain these fraudulent PPP funds.[1]

Mr. Qureshi and his associate were aware that PPP funds could only be used for certain business expenses. And they were also aware that the PPP loan was forgivable in its entirety if the business spent the proceeds on permissible expenses (including if a certain portion was spent on payroll expenses). Accordingly, the two schemed to fraudulently conceal the true, illegitimate use of these funds. At his associate's suggestion, Mr. Qureshi contracted with a company to provide

---

[1] This individual ended up approaching Mr. Qureshi's associate about obtaining a PPP loan on his behalf as well.

payroll services to his fake employees, including himself.[2] He engaged in various correspondence with this payroll company over time, directing them to add and remove purported employees from the payroll, and even making up fake roles for these individuals. Ultimately, Mr. Qureshi made $144,647.21 in sham payroll payments from the PPP funds. The remaining funds were illegitimately used for personal and family expenses. This fraudulent PPP loan was fully forgiven.

## ARGUMENT

The Government submits that a sentence of a year and a day is the appropriate term of imprisonment for the Defendant, to be followed by two years of supervised release.

**I.   The Defendant's Criminal History Category is I and His Total Offense Level is 14, Resulting in a Guidelines Range of 15 to 21 Months**

*Total Offense Level:*  The Government agrees with Probation that the Total Offense Level is 14. Presentence Report (PSR) at ¶ 36. Mr. Qureshi's base offense level is 7, raised by 12 levels for involving a loss amount more than $250,000 but less than $550,00, and lowered by 5 total levels since he is a zero-point offender and promptly accepted responsibility. *Id.* ¶¶ 27-35.

*Criminal History Category:*  The Government agrees with Probation that the Defendant's Criminal History Category is I.  *Id.* ¶ 39.

*Guidelines Range:*  Given the above calculations, the Government agrees with Probation that the Defendant's guidelines range is 15-21 months' imprisonment. *Id.* ¶ 72.

**II.  A Sentence of Twelve months and One day is Sufficient, But Not Greater Than Necessary, to Achieve the Goals of Sentencing**

The Court is required to impose a reasonable sentence that is sufficient but not greater than necessary based on multiple factors, including "the nature and circumstances of the offense," "the

---

[2]   None of the recipients of these fake payroll payments were employed by Yazee, Inc.  One of the recipients temporarily worked for Mr. Qureshi by covering his delivery route for his unrelated delivery job.

3

history and characteristics of the defendant," the need "to promote respect for the law," the need for just punishment, and the need for both specific and general deterrence. 18 U.S.C. § 3553(a).

The government submits that a total sentence of a year and a day would constitute a reasonable sentence pursuant to 18 U.S.C. § 3553(a), and the Supreme Court's decision in *Gall v. United States*, 552 U.S. 38, 51 (2007).

Primarily, the nature and circumstances of Mr. Qureshi's offense is serious. During one of the most catastrophic global events in recent memory, Defendant stole public funds that were intended to protect our nation's small businesses and their employees, as well as to protect our country from economic collapse. Defendant opportunistically treated these disaster relief programs as a payday and sought to loot them for personal profit. Defendant worked with an associate to fraudulently obtain a PPP loan worth a quarter of a million dollars. Then, Mr. Qureshi worked in a sophisticated manner to conceal the true use of these funds: he contracted with a payroll provider to create a convincing sham payroll so that this loan would be forgiven. In his communications with this payroll company by phone and email, Mr. Qureshi created fake employees with fake roles – bolstering this fraud by adding and removing people from the payroll over time – all to make it appear that Defendant had a legitimate business in need during a global pandemic.

The ongoing nature of Defendant's offense was not the result of a momentary lapse in judgment by an otherwise law-abiding citizen; nor was it a split-second decision made under financial duress. Defendant surreptitiously underwent significant efforts to wrongfully enrich himself. Therefore, the nature and circumstances of the Defendant's offense warrant the Government's recommended sentence of a year and a day's imprisonment.

The government's recommended sentence also provides just punishment and promotes general deterrence as well as respect for the law. Mr. Qureshi's malfeasance crowded out deserving small businesses for PPP funds. As a result of criminal actors like Defendant, a staggering amount

of pandemic relief funds did not reach the businesses and employees that needed those funds most. The SBA Office of Inspector General estimates that as much as 17 percent of the disbursements from pandemic-relief programs like the PPP went to fraudulent applicants like Defendant.[3] Indeed, the PPP had a finite pool of money; during the first round of the PPP, the program was depleted in just 13 days.[4] Money that was fraudulently obtained could have been used by legitimate businesses struggling to stay afloat during the COVID-19 pandemic – rather than personally enrich Defendant.

The recommended sentence will also serve as specific deterrence for Mr. Qureshi, which will help to protect the public. Defendant had many opportunities to stop his criminal conduct and chose not to do so. As noted, Mr. Qureshi's fraudulent behavior spanned across many months and required consistent effort on his part. He was able to keep up the façade long enough to get his PPP loan forgiven.

Regarding Defendant's history and characteristics, the instant offense is Defendant's first criminal conviction and that the crime is non-violent. But as noted above, Defendant's criminal behavior simply went undetected for almost a year. Therefore, Defendant's criminal record is not necessarily a reliable indicator of his likelihood to reoffend. His sophisticated and persistent effort in service of his fraud showcases an ability to maintain criminal activity over longer periods of time.

Mr. Qureshi's crime is even more noteworthy considering that he was not in a desperate situation. Compared to many other defendants who come before the Court, the Defendant has

---

[3]     *See* Small Business Administration, *COVID-19 Pandemic EIDL and PPP Loan Fraud Landscape Report*, https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape ("We estimate that SBA disbursed over $200 billion in potentially fraudulent COVID-19 EIDLs, EIDL Targeted Advances, Supplemental Targeted Advances, and PPP loans. This means at least 17 percent of all COVID-19 EIDL and PPP funds were disbursed to potentially fraudulent actors.").

[4]     *See* PBS Newshour, *It took 13 days for the Paycheck Protection Program to run out of money. What comes next?*, https://www.pbs.org/newshour/politics/it-took-13-days-for-the-paycheck-protection-program-to-run-out-of-money-what-comes-next.

benefitted from several stabilizing factors. These include a stable homelife in addition to support from his wife of 20 years, his three children, and his in-laws.

Finally, consistent with the parties' plea agreement, the government's recommended sentence of one year and one day's imprisonment is below the applicable sentencing guidelines. This is both due to the nature of negotiations during the plea-bargaining process and because the government acknowledges that there are mitigating factors to justify a below-guidelines sentence. The government defers to the defense to provide such mitigation but notes that the Defendant was corrupted by his associate, who was the architect of the scheme. Even so, however, the government contends that a sentence of one year and one day should be imposed in this case. The Defendant exploited a national disaster – an extraordinarily difficult period for everyone – to steal money for personal gain. He then spent months concealing the true nature of his crime by way of a sham payroll. This behavior is serious and requires that a message be sent to deter the next person seeking to exploit the next disaster.

Accordingly, the government submits that a sentence of a year and a day is appropriate and necessary to punish Defendant for his offense, to demonstrate the need to respect the law, and deter Defendant and others similarly situated from this type of activity in the future.

## Forfeiture

As part of the plea agreement, Defendant has agreed to forfeit the $250,723.00 in U.S. Currency obtained from his criminal activity. ECF No. 54 at ¶ 12. The Government respectfully requests that the Court incorporate the motion for forfeiture and preliminary order of forfeiture, to be filed subsequent to this memorandum, into its judgment at sentencing.

## Restitution

In the second plea agreement, Defendant "agree[d] to the entry of a restitution order for the full amount of the victims' losses . . . which the parties stipulate is at least $250,723.00." ECF No.

54 at ¶ 19. Accordingly, the government requests that the Court order the stipulated restitution amount, which is due and owing to the Small Business Administration.[5] The Government requests that the Court order interest to accrue on the restitution obligation. *See* 18 U.S.C. § 3612(f)(1) ("*In general.* – The defendant shall pay interest on any fine or restitution of more than $2,500 . . . .") (emphasis added).

## Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a term of imprisonment of one year and one day, two years of supervised release, a forfeiture money judgment of $250,723.00, restitution of $250,723.00, and the mandatory $100 special assessment.

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Jared M. Beim
Assistant United States Attorney

---

[5] The government requests that restitution should be ordered paid to the following address:

United States Small Business Administration (Court Ordered Restitution)
SBA/DFC, 721 19th St, 3rd Floor, Room 301, Denver, CO 80202

## **CERTIFICATE OF SERVICE**

This is to certify that on this day, **August 21, 2024**, a copy of the foregoing Government's Sentencing Memorandum was electronically filed and delivered via ECF to all counsel of record in this matter.

                                                                                       /s/
                                                                       Jared M. Beim
                                                                       Assistant United States Attorney